508 P.2d 1332

**Tony B. TRUJILLO, Plaintiff-Appellant,**

**v.**

**Arthur TANUZ, d/b/a Golden Tee Cocktail Lounge and Dining Room, and United States Fidelity & Guaranty Company, Defendants-Appellees.**

**No. 1034.**

Court of Appeals of New Mexico.

March 23, 1973.

Tandy L. Hunt, Turpen, Hunt & Booth, Albuquerque, for plaintiff-appellant.

Charles A. Pharris, Keleher & McLeod, Albuquerque, for defendants-appellees.

## OPINION

SUTIN, Judge.

This is a workmen's compensation case. The trial court awarded plaintiff 50% permanent disability, and plaintiff appeals.

We affirm in part and reverse in part.

### A. *Findings of Fact.*

The trial court made the following findings of fact:

Plaintiff sustained an accidental injury on or about August 11, 1969, arising out of and in the course of his employment. Defendants had actual knowledge of this injury. As a natural and direct result of the subject accidental injury, plaintiff had a 50% permanent disability. At the time of the injury, the average weekly earnings of plaintiff were $59.40. The maximum allowable recovery is 60% of the average weekly earnings or $35.64 per week, so plaintiff is entitled to 50% of $35.64 or $17.82 per week in compensation benefits.

Plaintiff returned to work on September 15, 1969, and continued work there steadily up until on or about May 1, 1970, when he discontinued such employment. For this period, plaintiff earned $59.40 per week as

he had previously, so he was not entitled to compensation benefits. During the period September 15, 1969 to May 1, 1970, plaintiff performed the same duties he had previously performed in the course of his employment.

Defendants paid five weeks in compensation benefits and they are required to pay plaintiff for an additional 495 weeks. Defendants currently owe plaintiff for 158 weeks compensation or a total of $2,815.56, and in addition, defendants are required to pay plaintiff's unpaid doctor, hospital, pharmacy or other medical bills, if any.

Defendants are liable for a reasonable attorney fee of $1,000.00, and for an expert witness fee of $150.00.

B. *Plaintiff Violated Section 21–2–1(15) (16)(b)(c)(e), N.M.S.A.1953 (Repl. Vol. 4) Covering Statement of Proceedings.*

■ In the statement of proceedings, plaintiff failed to set forth any summary of the findings of the trial court, as provided by Rule 15(16)(b) [§ 21–2–1(15)(16)(b), N.M.S.A.1953 (Repl.Vol. 4)]. In fact, plaintiff failed to set forth the findings of the trial court anywhere in his brief. In Petty v. Williams, 71 N.M. 338, 340, 378 P.2d 376 (1963), the court said:

We cannot condone such a total lack of regard, by attorneys practicing in this court, of the basic rules governing appeals.

■ Plaintiff also violated Rule 15(16)(c). Almost three pages of claimed facts were stated without reference to the refusal or failure of the trial court to make a particular finding or findings. Plaintiff then stated:

The judgment in this case is not in the usual form as specified in the Rules of Civil Procedure (Rule 52(7). [sic, § 52(B)(a)(7), N.M.S.A.1953 (Repl.Vol. 4)].

This statement is wrong. The word "decision" used in Rule 52(B) does not mean "judgment." It means "findings of fact

and conclusions of law." Rule 52(B)(a)(1), supra. The "decision" was "contained in a single document; . . . ." and was correct as to form.

Plaintiff further stated:

Assuming, without conceding, that the Court's findings contained in a separate document from the judgment are appropriate, then the following Findings are challenged:

A. Finding No. 5, Tr. 39, challenged under Point I; . . .

Other findings were similarly challenged.

■ Although it is of little value to some attorneys who do appellate work, we must emphasize again and again that in the statement of proceedings, in a trial before the court, the appellant must read and follow § 21–2–1(15)(16)(b)(c)(e), supra. This section applies to findings of fact made and refused in a trial before the court, and any ruling of the court claimed as error.

■ However, the punishment for a violation of this rule appears to be within the discretion of this court. We may decide cases on the merits if we so desire. Crockett v. Encino Gardens Care Center, Inc., 83 N.M. 410, 492 P.2d 1273 (Ct.App. 1971); Petty v. Williams, supra. Apparently, in some cases, we do not want to punish the client for the negligence of his attorneys.

C. *Plaintiff is only Entitled to 50% Permanent Disability.*

■ The trial court found plaintiff suffered 50% permanent disability. Plaintiff attacks this finding. The basis of the attack is that the trial court lacked authority to apportion compensation benefits between successive job related accidents. The trial court made no finding on this issue.

The trial court found:

5. As a natural and direct result of the *subject* accidental injury, the Plaintiff has a fifty percent (50%) disability. [Emphasis added]

By "subject" accidental injury, the court meant the accident which occurred on or about August 11, 1969. This finding was not attacked for lack of substantial evidence to support it. The above finding is conclusive on appeal. Petty v. Williams, supra.

 Plaintiff's requested findings on job related accidents are not considered. Plaintiff did not comply with Supreme Court Rules 15(6), or with 15(16)(b) and (c) [§§ 21–2–1(15)(6); 21–2–1(15)(16)(b)(c), N.M.S.A.1953 (Repl.Vol. 4)]. Requested findings contrary to unchallenged findings and conclusions cannot raise an issue on appeal. Prager v. Prager, 80 N.M. 773, 461 P.2d 906 (1969).

 Plaintiff's argument on apportionment of compensation benefits between job related accidents is without merit. The degree of disability is a question of fact for the trial court. The primary test for disability is plaintiff's capacity to perform work. Adams v. Loffland Brothers Drilling Company, 82 N.M. 72, 475 P.2d 466 (Ct.App.1970). The trial court found plaintiff performed the same duties he had previously performed up to the time he discontinued such employment. Nevertheless, the trial court gave plaintiff the benefit of 50% permanent disability. This is all plaintiff is entitled to receive.

D. *Plaintiff's Compensation Rate was not Properly Computed Because the Average Weekly Wage was not Based on the State Minimum Hour Wage Rate.*

Plaintiff contends that the average weekly compensation rate should have been computed on the basis of $1.30 per hour as provided by § 59–3–22(B), N.M.S.A.1953 (Repl.Vol. 9, pt. 1, Supp.1971) of the "Minimum Wage Act." We agree.

The "Minimum Wage Act" makes a violation thereof a misdemeanor punishable by fine or imprisonment or both. It also grants an employee remedies for recovery of unpaid minimum wages and an additional equal amount as liquidated damages, plus costs and reasonable attorneys' fees. Section 59–3–24, supra.

Section 59–10–12.13(D), N.M.S.A.1953 (Repl.Vol. 9, pt. 1, Supp.1971) of the Workmen's Compensation Act reads as follows:

D. Provided, that in case such earnings have been unusually large on account of the employer's necessity temporarily requiring him to pay extraordinary high wages, such average weekly earnings shall be based upon the usual earnings in the same community for labor of the kind the workman was performing at the time of the injury. *In any event the weekly compensation allowed shall not exceed the maximum nor be less than the minimum provided by law.* [Emphasis added]

Plaintiff relies on the portion emphasized. Plaintiff testified he was paid $1.10 per hour and he worked nine hours a day, six days a week. His average weekly wage was $59.40. The employer did not dispute these facts. The trial court adopted this amount even though the payroll records showed an average weekly wage of $56.30 at the time of the accident.

Section 59–10–12.13, supra, provides that ". . . the average weekly wage of an injured employee shall be taken as the basis upon which to compute compensation payments . . . ." It also provides the method of computing average weekly wages when payment is made at an hourly rate. The trial court followed this procedure.

The emphasized language, supra, is the end of a long statutory provision for determination of average weekly wage. It has not been interpreted before and is a matter of first impression.

In C.S.1929, § 156–112(m), the pertinent language at the end of the paragraph read:

In any event the weekly compensation allowed shall not exceed the maximum nor be less than the minimum *provided in Section 17 hereof.* [Emphasis added]

Laws 1937, ch. 92, § 6, replaced former subsection (m) with subsection (m) set

forth as § 59–10–12(m)(4), N.M.S.A.1953 (Repl.Vol. 9, pt. 1). It read as it does now:

> In any event the weekly compensation allowed shall not exceed the maximum nor be less than the minimum *provided by law.* [Emphasis added]

■ The Supreme Court has said that " '. . . . If the statute does not work with justice to the workmen, this is a matter for the Legislature. . . .' " La Rue v. Johnson, 47 N.M. 260, 141 P.2d 321 (1943). It is obvious the legislature intended a change in meaning when it replaced the phrase, "provided in Section 17 hereof," by the phrase, "provided by law." "Provided by law" means "provided by statute law." Fountain v. State, 149 Ga. 519, 101 S.E. 294, 295 (1919).

■ The phrase "in any event" in the above quotation means "no matter what else may be" or "whatever may happen." Olson v. Rossetter, 330 Ill.App. 304, 71 N. E.2d 556, 560 (1947). It is a prohibition. No event and no circumstance can excuse compliance with the conditions stated. Thrall v. Grant County Board of Education, 38 N.M. 358, 359, 33 P.2d 908 (1934).

■ The emphasized language, supra, means that regardless of what event occurs, the weekly compensation allowed by the court, based on an hourly rate, shall not be an hourly rate less than the minimum provided by the Minimum Wage Act.

If there is some doubt over the construction of the statute, we need not quarrel over the change in phraseology, see Janney v. Fullroe, 47 N.M. 423, 144 P.2d 145 (1943), nor whether the emphasized language covers only the provisos. We will meet the challenge head on.

■ The real question is: Must the trial court, in fixing weekly compensation, apply an actual hourly wage paid an employee if it is illegal? The answer is "no."

Kendrick v. Gackle Drilling Company, 71 N.M. 113, 376 P.2d 176 (1962), cites Larson, Workmen's Compensation Law, § 60.-11. The question and answer are found in Larson. The cases relied on by defendants are discussed in Larson and 99 C.J.S. Workmen's Compensation § 292. In these cases, the employer was not required to follow the Federal Fair Labor Standards Act. These cases can be distinguished. Under the New Mexico Minimum Wage Act, § 59–3–26.1, N.M.S.A.1953 (Repl.Vol. 9, pt. 1, Supp.1971), provides:

> When any employer would be covered by both the provisions of the Federal Fair Labor Standards Act and the provisions of the state Minimum Wage Act . . ., the Fair Labor Standards Act shall exclusively apply.

But even if defendants' cases cannot be distinguished, we agree with *Larson,* supra, that the cases cited by defendant were clearly wrong. 2 Larson's Workmen's Compensation Law, § 60.11, pp. 88.186, 187 (1970), states:

> There seems to be no reason why the outcome should be affected by the fact that it is a federal statute that happens to be involved in these two cases. The same point could easily arise under a state minimum wage statute. If the first case presenting this point had arisen under a state statute, it seems difficult to believe that the wage made illegal by state law would be adopted for purposes of a wage calculation under another state law. This being so, the question is narrowed to the issue whether there is any good reason for distinguishing between a state and federal minimum wage law for this purpose. In both cases, the substandard wage is illegal under the law of the land, and in both cases the claimant has a legal right to the higher wage which can be enforced by appropriate proceedings.
>
> \* \* \* \* \* \*
>
> . . . [I]t hardly seems within the spirit of the Workmen's Compensation Act to put the claimant through this succession of legal proceedings in order to have the benefits based upon "fair" wage to which he was legally entitled.

We agree. Based on an hourly wage rate of $1.30, the average weekly wage is computed at $70.20. Plaintiff is therefore entitled to $21.06 per week in compensation benefits instead of $17.82.

Other corrections are necessary to make the findings, conclusions and judgment conform to this new mathematical computation.

E. *Plaintiff is Entitled to 6% Interest on the Judgment Rendered.*

The judgment provides in part:

IT IS FURTHER ORDERED ADJUDGED AND DECREED that 158 weeks of compensation benefits are currently due which is a lump sum of $815.-56, and in addition defendants are required to pay interest at the rate thereon of six percent (6%).

The amount of the lump sum stated is wrong and a much larger amount will be stated on reversal.

Plaintiff mistakenly raised the issue of payment of interest. Payment of interest was omitted in a void amended judgment entered after notice of appeal was filed. It was not omitted from the judgment before this court.

Defendants, not having cross-appealed, cannot now contend that payment of interest is void because interest is not allowed in the Workmen's Compensation law. The trial court's judgment on this issue is final. State ex rel. Maloney v. Sierra, 82 N.M. 125, 477 P.2d 301 (1970).

We do not find it necessary to determine whether § 50–6–3, N.M.S.A.1953 (Repl.Vol. 8, pt. 1) on 6% interest is applicable to this judgment.

Plaintiff is entitled to 6% interest on the amount of the lump sum from the date of the judgment, June 2, 1972, to the date it is paid.

F. *Trial Court did not Abuse Discretion in Allowing Plaintiff $1,000.00 Attorney Fee.*

Plaintiff claims the trial court abused its discretion in awarding plaintiff $1,000.00 as an attorney fee pursuant to § .59–10–23(D), N.M.S.A.1953 (Repl.Vol. 9, pt. 1). This award does not shock the conscience of this court. There was no abuse of discretion.

Trial court attorney fees have been increased, Waymire v. Signal Oil Field Service, Inc., 77 N.M. 297, 422 P.2d 34 (1966), and decreased, Seal v. Blackburn Tank Truck Service, 64 N.M. 282, 327 P.2d 797 (1958); Ortega v. New Mexico State Highway Department, 77 N.M. 185, 420 P. 2d 771 (1966).

Although we might assess attorney fees in an amount greater than $1,000.00, we cannot state, as a matter of law, that the fees were inadequate and the granting thereof an abuse of discretion by the trial court. Adams v. Loffland Brothers Drilling Company, supra.

Before the trial court made its award, the record failed to disclose the amount of time plaintiff's attorney spent in conferences, if any, investigations made, if any, research, legal and medical, if any, preparation for trial, etc. Plaintiff's attorney simply submitted the State Bar Association standards on Contingent Fees. Section 59–10–23(D), supra, is not based on the contingent fee standard. We believe the trial court, pursuant to § 59–10–23(D), supra, did take into consideration, in fixing a reasonable fee, (1) the sum offered by the defendants, and (2) the present value of the award made in the workman's favor.

The judgment is affirmed on the basis of, (1) 50% permanent disability; (2) interest of 6% on the judgment; (3) $1,000.-00 attorney fee.

The judgment is reversed with instructions to enter judgment in conformity with the computation made in Point D of this opinion as applied to, (1) average weekly earnings; (2) the amount owed plaintiff for 158 weeks compensation. Plaintiff is awarded an additional attorney fee of $1,000.00 for presenting this appeal.

It is so ordered.

**42**

LOPEZ, J., concurs.

HENDLEY, J., concurs in part and dissents in part.

HENDLEY, Judge (concurring in part and dissenting in part).

I do not agree with nor can I see the purpose of that part of the majority opinion under section "B". There was a substantial compliance with the rules.

I do not agree with that part of the majority opinion under section "C". Plaintiff challenged the trial court's finding of fact No. 5 for lack of substantial evidence in the brief-in-chief where he stated: "Appellant [plaintiff] is unaware of any testimony that would support a determination that Mr. Trujillo [plaintiff] was only 50 per cent disabled." A review of the record, however, does disclose substantial evidence to support the finding.

I do not agree with that part of the majority opinion under section "D". Section 59–10–12.13(D), N.M.S.A.1953 (Repl. Vol.1960, Supp.1971) is not applicable. It deals exclusively with "unusually large" earnings. I do agree with that part of the majority opinion which relies on the reasoning of 2 Larson's, Workmen's Compensation Law, § 60.11 (1970). I concur in the reversal and remand on this point for correction of the judgment entered.

I do not agree with that part of the majority opinion under section "E". It misconceives plaintiff's argument. Plaintiff argues he should have interest from 31 days after the date of the occurrence of the disability. Section 59–10–13.5, N.M.S. A.1953 (Repl.Vol. 1960, Supp.1971). Two reasons are advanced in support of this argument: first, the trial court found plaintiff disabled and defendants had failed to pay "the compensation benefits when they were due," and, second, that plaintiff "should not be penalized" for defendants' failure to pay promptly. The answer is simple. The Workmen's Compensation Act does not provide for such an award. However, under the majority opinion and under the dissent there is no error in the judgment.

I do not agree with that part of the majority opinion under section "F". The provisions of § 59–10–23(D), N.M.S.A.1953 (Repl.Vol. 1960) relating to attorneys fees are mandatory. Keyser v. Research Cottrell Company, 84 N.M. 173, 500 P.2d 997 (Ct.App.1972). The record is silent as to what was actually considered by the trial court. Absent a showing that the trial court considered something other than the statutory requirements we cannot say, as a matter of law, that the trial court did not follow the mandate of § 59–10–23(D), supra.

For the foregoing reasons, I concur in part and dissent in part, disagreeing with the reasoning of the majority.