695 P.2d 494

**Ariel SALCIDO, Plaintiff-Appellant,**

v.

**TRANSAMERICA INSURANCE GROUP, INC., and Southwest Lath & Plaster, Inc., Defendants-Appellees.**

**No. 7012.**

Court of Appeals New Mexico.

Aug. 16, 1983.

</div>

Lorenzo A. Chavez, Martin J. Chavez, Albuquerque, for plaintiff-appellant.

Sarah M. Bradley, Bradley & McCulloch, P.A., Albuquerque, for defendants-appellees.

## OPINION

HENDLEY, Judge.

Plaintiff appeals the trial court's granting of defendants' motion for summary judgment. We discuss whether defendants were obligated to pay benefits when plain-

tiff returned to work, whether plaintiff was being paid at the proper rate, and whether reasonable medicals were being provided. We affirm.

Plaintiff was injured in a vehicular accident arising out of and in the course of his employment on May 5, 1982. Benefits were paid from that date through June 16, based on $6.00 per hour. Plaintiff returned to work on June 17 and worked through July 1 at the rate of $6.00 per hour. Benefits were not paid during this period. Benefit payments were resumed on July 2 based on $6.00 per hour.

Plaintiff worked "off and on" for Southwest since 1976, returning to Mexico to visit periodically. In October, 1981, he quit working for Southwest to visit Mexico. During 1981, he worked for ten months, the latter part of which were compensated at the rate of $6.00 per hour.

When plaintiff returned to work on April 2, 1982, Southwest was a subcontractor on a government project on the Nambe and Tesuque Pueblos. This was only temporary work after which plaintiff was to return to work off the Pueblos at $6.00 per hour. Wages were determined at the rate of $13.58 per hour pursuant to what the parties refer to as the Davis-Bacon Act. Of the 129.5 hours worked in 1982 up to the date of the accident, 112.5 hours were compensated at $13.58 per hour and 17 hours at $6.00 per hour. The government work would have been completed three days after the accident occurred. Plaintiff would have been returned to the $6.00 per hour rate.

### Default

Plaintiff's argument that defendants defaulted by not paying benefits for the period of time he returned to work is without merit. His basic argument is that there is a question of fact as to his capacity to perform work during that time period.

■ Plaintiff does not show, nor can we see, how he has been harmed or penalized by his attempt to return to work. He was paid his regular wages during his return. Benefits were reinstated immediately upon his discontinuation of work. This is not a question of disability following post injury employment, nor is it a question of penalizing the worker for his reemployment efforts. *See, e.g., Maes v. John C. Cornell, Inc.*, 86 N.M. 393, 524 P.2d 1009 (Ct.App. 1974); *Adams v. Loffland Brothers Drilling Company*, 82 N.M. 72, 475 P.2d 466 (Ct.App.1970). To award plaintiff compensation for this period of time would, in fact, be awarding him a windfall.

### Compensation Rate

NMSA 1978, § 52–1–20, states in pertinent part:

**52–1–20. Determination of average weekly wage.**

\*    \*    \*    \*    \*    \*

D. provided, that in case such earnings have been unusually large on account of the employer's necessity temporarily requiring him to pay extraordinary high wages, such average weekly earnings shall be based upon the usual earnings in the same community for labor of the kind the workman was performing at the time of the injury. In any event the weekly compensation allowed shall not exceed the maximum nor be less than the minimum provided by law.

Plaintiff argues that 1) defendant Southwest was not of necessity temporarily required to pay extraordinarily high wages, and 2) "in the same community" is restricted to the Pueblos.

■ Plaintiff received $13.58 per hour only when he worked on the Pueblos. When he worked off the Pueblos, he received $6.00 per hour. There is nothing in the record to raise a material issue of fact as to whether the Pueblo wages were of necessity extraordinarily high. The $13.58 per hour was not plaintiff's regular wage— he received that amount only when working on the Pueblos. Under the facts presented here, the employer was of necessity paying extraordinarily high wages for temporary work.

■ We also disagree with plaintiff's argument that the "same community" should

be restricted to the Pueblos for purposes of determining compensation rates under § 52–1–20(D). The "same community" is a broader area. It is the area in which plaintiff normally worked. Plaintiff normally worked in Albuquerque, Santa Fe, and Espanola. Most jobs were not on the Pueblos. The Pueblo jobs were only temporary. The trial court was correct in considering the regular wage he earned when working in those areas off the Pueblos. The only evidence as to wages for plasterers was $13.58 per hour on the Pueblos and $6.00 per hour off the Pueblos. Under these facts, the trial court was correct in finding that the usual earnings in the "same community" for plasterers was $6.00 per hour.

**Medicals**

Following the accident, plaintiff was treated in Santa Fe, and then at Bernalillo County Medical Center. Defendants have paid for all of these services. Plaintiff sent defendants a bill for $670.00 for chiropractic services commencing September 29, 1982. Plaintiff asserts that there has been a failure to provide medical services or, at best, only a passive willingness by defendants to do so.

Assuming for purposes of this opinion, that the issue was properly raised and preserved, we disagree with plaintiff. Once the employer provides for medical services, which are reasonably necessary, and offers those services to the workman, the employer is not liable for services other than those offered. NMSA 1978, § 52–1–49; *Provencio v. New Jersey Zinc Co.*, 86 N.M. 538, 525 P.2d 898 (Ct.App.1974).

The summary judgment of the trial court is affirmed.

IT IS SO ORDERED.

NEAL and BIVINS, JJ., concur.